IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **MUHAMMAD MOHSIN KHAN**, <br><br>　　　　　　Plaintiff, <br><br>　　v. <br><br>**RENA BITTER**, *et al.*, <br><br>　　　　　　Defendants. | **Case No. 22 C 6617** <br><br> **Judge Harry D. Leinenweber** |

**MEMORANDUM OPINION AND ORDER**

　　Plaintiff Muhammad Mohsin Khan ("Khan") petitions the Court for a writ of mandamus and seeks injunctive relief for alleged violations of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555(b) and 706(1). Plaintiff's petition is brought against Rena Bitter, Assistant Secretary of the U.S. Department of State; Andrew Schofer, Deputy Chief of Mission at the U.S. Embassy in Pakistan; and Antony Blinken, Secretary of the U.S. Department of State (collectively, the "Defendants").

　　On November 28, 2022, Plaintiff filed his two-count petition requesting the Court order Defendants to adjudicate on Plaintiff's immigrant visa application. [Dkt. No. 1 ("Petition") or ("Pet.").] Both counts are based on the alleged delay in processing Khan's application that he filed on behalf of his daughter, who currently resides in Pakistan. Count One seeks relief under the APA, 5 U.S.C. § 706(1), and Count Two is brought under the Mandamus Act, 28

U.S.C. § 1361. Defendants now seek dismissal for lack of subject matter jurisdiction, and in the alternative, for failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively. [Dkt. No. 16 ("Motion") or ("Mot.").]

For the reasons stated herein, the Court grants Defendants' Motion to Dismiss for lack of subject matter jurisdiction.

### I. BACKGROUND

#### A. Immigrant Visa Processing

A foreign citizen seeking to live permanently in the United States requires an immigrant visa. U.S. Dept. of State, Family Immigration, *https://perma.cc/K7LT-YY3J* (last visited September 26, 2023). There are two types of family-based immigrant visas: (1) immediate relative visas based on a close family relationship with a U.S. citizen; and (2) family preference visas, which include immigrant visas sought for the foreign citizen spouse of a U.S. Lawful Permanent Resident ("LPR"). (*Id.*)

The National Visa Center ("NVC"), which is part of the U.S. Department of State ("DOS"), performs clerical processing for immigrant visa applications. This includes ensuring that all fees have been paid and that the required documents have been submitted (*i.e.,* documentarily complete). U.S. Dept. of State, Immigrant Visa Process, *https://perma.cc/W3TB-HXTV* (last visited September 26, 2023); *See Poursohi v. Blinken,* 2021 WL 5331446, at

*1 (N.D. Cal. Nov. 16, 2021). Only when a case is determined to be documentarily complete, and a visa number is available will NVC schedule an appointment for the beneficiary of the application to appear for an interview at a U.S. embassy or consulate overseas before a consular officer. *Id.* Because each embassy and consulate are only able to interview a set number of immigrant visa applicants a day, NVC uses the date on which a case was documentarily qualified to determine the order in which cases are scheduled for appointments in the event demand exceeds processing capacity. *Id.* When an interview is scheduled, NVC prepares and sends an appointment letter to the beneficiary and sends the case file to the embassy or consulate before the interview. *Id.* Each immigrant visa processing post regularly reports to NVC how many total visa interview appointments it can accommodate. *Id.* Based on that information, the NVC schedules cases for each post approximately two months in advance. *Id.*

### B. Visa Processing During COVID-19

In March 2020, the Office of Management and Budget ("OMB") directed all federal agencies, including the Department of State, to utilize the full scope of their legal authority to minimize face-to-face interactions due to the COVID-19 pandemic. [Dkt. No. 15-1 ("Holcombe-Geddens Decl.") ¶ 6.] In response to that OMB directive, the Department of State suspended all routine visa

services worldwide on March 20, 2020. (*Id.*) The suspension of routine visa services included suspending the scheduling of immigrant visa ("IV") and nonimmigrant visas ("NIV"), as well as the cancellation of IV and NIV interviews at consular posts worldwide. (*Id.*) In March 2021, the Consular Section resumed all routine ACS and IV and NIV services but has still been unable to process as many applicants since the COVID-19 pandemic as it did prior to the pandemic. (*Id.* ¶¶ 8-9.) Further, the Consular Section at the U.S. Embassy in Islamabad assisted those who were evacuated out of Afghanistan after the fall of Kabul in August 2021. Between August 2021 and October 2021, the U.S. Mission in Islamabad processed thousands of U.S. citizens, U.S. legal permanent residents, locally employed staff from U.S. Embassy Kabul, and other U.S. government-affiliated noncitizens for onward travel to the United States through various legal pathways, including hundreds of IV applications for Afghan nationals. (*Id.* ¶ 10.)

**C. Plaintiff's Family-Based Immigrant Visa Application**

In April 2018, Plaintiff filed a Form I-130 with U.S. Citizenship and Immigration Services ("USCIS") on behalf of his daughter, Bisma Khan. (Pet. ¶ 10.) On January 13, 2020, after approving the Form I-130, USCIS forwarded the Form I-130 to the NVC for further processing. (*Id.*) On March 1, 2021, the NVC determined that Bishma Khan's visa case was documentarily

complete, meaning she was eligible for an interview and to apply for a visa. (Holcombe-Geddens Decl. ¶ 12.)

As of August 1, 2023, Khan's visa case retrogressed. [Dkt. No. 19 ("Motion") ¶ 3.] Because USCIS processes petitions daily and updates its bulletin monthly, sometimes the cut-off date moves backward or "retrogresses." See Adjudicative Review, USCIS Policy Manual, Vol. 7, Part A, Ch. 6, USCIS, *https://perma.cc/CG9A-QTFR* (last visited September 26, 2023). As USCIS explains, "[s]ometimes [an immigrant visa number] that is current one month will not be current the next month, or the cut-off date will move backwards to an earlier date . . . Visa retrogression generally occurs when the annual limit for a category or country has been used up or is expected to be used up soon." (*Id.*) Plaintiff expected voluntarily to dismiss the case because during retrogression, the case is not eligible to be scheduled for an interview. [Dkt. No. 23, Sept. 12, 2023, Status Hearing]; *see also Singh v. U.S. Dep't of Homeland Security,* 2023 WL 2229001, at *5-6 (N.D. Iowa Feb. 24, 2023) (plaintiff lacked standing based on redressability regarding unreasonable delay for adjudication of visa when visa retrogressed). However, on September 15, 2023, USCIS posted the October visa bulletin that Plaintiff's petition had become current once again [Dkt. No. 24 ("Status Report") ¶ 9.] The parties do not dispute that this change in status renders Plaintiff's claims

- 5 -

justiciable, as Plaintiff is once again eligible for a consular interview.

## II. LEGAL STANDARD

Defendants have moved to dismiss Plaintiff's petition under both Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. "When a motion to dismiss is based on a lack of subject matter jurisdiction pursuant to Rule 12(b)(1), as well as other Rule 12(b)(6) defenses, the court should consider the Rule 12(b)(1) challenge first." *Rizzi v. Calumet City*, 11 F.Supp.2d 994, 995 (N.D. Ill. 1998) (internal quotations omitted). If the court dismisses Plaintiff's petition for lack of subject matter jurisdiction, the accompanying Rule 12(b)(6) defenses become moot and need not be addressed. *Id*. at 995.

## III. DISCUSSION

### A. Count One – APA

The APA specifically states that, "within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). Additionally, the APA provides, "[t]he reviewing court shall compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). "A delay cannot be unreasonable with respect to an action not required," and therefore, an unreasonable delay claim under § 706(1) requires an agency action that is mandatory. *Norton v. Southern Utah Wilderness*

*Alliance*, 542 U.S. 55, 63 n.1 (2004). The APA prohibits judicial review of agency action if, (1) a statute "precludes judicial review," or (2) "the agency action is committed to agency discretion by law." 5 U.S.C. § 701(a); *Id.* at 64.

Subject matter jurisdiction over claims under the APA for unreasonable delay in agency action require plaintiffs to establish that the government has a "specific, non-discretionary dut[y]" to act. *Ali v. U.S. Dep't of State,* 2023 WL 3910249, at *4 (E.D.N.C. June 8, 2023); *Babamuradova v. Blinken,* 633 F.Supp.3d 1, 19 (D.D.C. Sept. 27, 2022) (citing *Norton*, 542 U.S. at 64). In the context of mandamus petitions and APA claims brought by individuals awaiting an interview for a family-based immigrant visa application – which are the facts here – courts in this district and others assess APA subject matter jurisdiction by determining specifically whether the State Department has a clear, nondiscretionary duty to schedule the interview in that process. The weight of caselaw finds there exists no such duty, even when applicants are documentarily qualified.

In *Prince v. Blinken,* a U.S. citizen petitioned for writ of mandamus and brought APA claims against the U.S. Department of State for an allegedly unreasonably delayed adjudication on the immigrant visa application she filed for her husband in Pakistan. 2023 WL 5670158 (N.D. Ind. Aug. 31, 2023). Specifically, the

plaintiff and her husband awaited the scheduling of an interview, as Plaintiff does here. *Id*. at *3. The Court determined there was not a clear, mandatory duty to schedule visa interviews. *Id*. at *2. "The State Department considers the consular interview as the point at which an application for a visa is made . . . [] after the interview, the consular officer must issue the visa or refuse the application." *Id*. (internal citations omitted)(citing 8 U.S.C. § 1201(g); 22 C.F.R. § 42.81(a)). The court concluded, like others, that the "scheduling of visa application interviews is a discretionary function of State Department officials" and plaintiff was unable to "establish a clear and nondiscretionary duty that required [plaintiff] to be granted such an interview." *Id.* at *3. *See also Khalili-Araghi v. Bitter,* 2023 WL 5988590, at *4-5 (N.D. Cal. Sept. 13, 2023) (duty to adjudicate visa application in family-based immigrant case invoked only after interview since "relevant regulations consider an applicant to have actually made or filed a visa application only when she personally appear[s] before an officer for an interview")(internal quotations omitted); *Abakporo v. Nat'l Visa Center,* 2023 WL 474335, at *3 (W.D. Wash. Jul. 25, 2023) (no finding of duty to interview in family-based immigration petition); *Throw v. Mayorkas,* 2023 WL 2787222, at *3 (W.D. Wash. Apr. 5, 2023) ("[T]he Court can find no

statutory or regulatory obligation requiring the State Department to schedule a consular interview by a date certain").

Plaintiff contends the duty comes from 8 U.S.C. § 1202(b) ("All immigrant visa applications shall be reviewed and adjudicated by a consular officer"). However, as detailed above, 8 U.S.C. § 1202(b) does not create this duty because as a technical matter, regulations consider a "visa application" to be made or filed only after the interview itself, and the duty is invoked only after the interview. *See Taj v. U.S. Dep't of State,* 2022 WL 17250302, at *5 (D.D.C. Nov. 28, 2022).

Because Plaintiff has not shown a duty exists, the Court lacks the subject matter jurisdiction to hear the APA claim.

### B. Count Two – Mandamus

Pursuant to 28 U.S.C. § 1361, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "Mandamus relief will be granted if the plaintiff can demonstrate that the three enumerated conditions are present: (1) a clear right to the relief sought; (2) that the defendant has a duty to do the act in question; and (3) no other adequate remedy is available." *Iddir v. I.N.S.,* 301 F.3d 492, 499 (7th Cir. 2002). "These three threshold requirements are jurisdictional; unless all are met, a

court must dismiss the case for lack of jurisdiction." *American Hospital Ass'n v. Burwell,* 812 F.3d 183, 189 (D.C.C. 2016). As with the APA, the lack of a mandatory, non-discretionary duty deprives this Court of subject-matter jurisdiction over the mandamus claim. *Id*. A district court's "consideration of any mandamus petition starts from the premise that issuance of the writ is an extraordinary remedy, reserved only for the most transparent violations of a clear duty to act." *Aljabari v. Mayorkas,* 2022 WL 2073047, at *2 (N.D. Ill. June 9, 2022)(internal quotations omitted).

Even were the Court to find there was subject matter jurisdiction, Plaintiff would not pass muster on the next inquiry – whether the delay has been unreasonable. The Seventh Circuit has not considered mandamus actions in the context of family-based visas but has done so in the context of U-Visas – a separate visa category. In *Calderon-Ramirez v. McCament,* the parties did not dispute that the applicable U-Visa statute mandated the U.S. State Department adjudicate the applications within a "reasonable period of time." 877 F. 3d 272, 275 (7th Cir. 2017). But the Seventh Circuit found that the plaintiff was unable to "set forth any facts that differentiate himself from other petitioners waiting ahead of him for adjudication." *Id*. at 275-276. Priority for the U-Visa processing was determined by an applicant's place in the queue,

and the Court did not find that the plaintiff's "wait time has been more unreasonable than other petitioners waiting in the same line." *Id.* at 276. Here, Plaintiff does not dispute that there are "2,331 pending documentarily complete family-preference cases pending the scheduling of an interview to make a visa application at the U.S. Embassy in Islamabad ahead of [his own] case." (Holcome-Geddens Decl. ¶ 13.) Without undermining the extremely painful wait time that Plaintiff and his daughter have suffered, the Court does not find Plaintiff's situation warrants jumping the line at this time. This is only undermined by the drastically limited capacity at the U.S. Embassy in Islamabad due to the COVID-19 pandemic, particularly in light of the resources the embassy diverted to assisting Afghan nationals evacuated after the fall of Kabul in 2021.

One final point. Defendants contend that there cannot be an unreasonable delay because in measuring an alleged delay, the clock starts at the last government action. Because the last government action was in rendering Plaintiff's visa application "current" via the latest visa bulletin on September 15, 2023, the few weeks since this announcement cannot constitute an unreasonable delay. Plaintiffs point to the total time that has passed since the initial filing – over three years. While the Court need not determine this issue because it has already determined the

threshold issue of subject matter jurisdiction, it is worth briefly touching on this issue of timing.

The Court is not convinced that the clock restarts at the most recent updated visa bulletin, as Defendants contest. Defendant cites a case that frames the clock starting at the time Plaintiff becomes "documentarily qualified." *Khalili-Araghi,* 2023 WL 5988590, at *6. Plaintiff became documentarily qualified on March 1, 2021. When Plaintiff's visa retrogressed, it is undisputed that Plaintiff was not eligible to receive an interview at that time because there were insufficient numbers of available visas for Plaintiff's type of application. But to have the clock restart each time a visa retrogresses would demand a wholesale disregard of the time an individual has already waited – an inappropriately myopic approach, considering Defendant does not argue that documentary qualification is affected during retrogression. As soon as more visa applications become available, the applicant is back in line.

While the Court cannot compel Defendants to adjudicate Plaintiff's application, it "echoes others that have cautioned the agency to devote the resources and put in place the apparatus needed to evaluate the many claims for [family-based visas] expeditiously to ensure that the [family-based] provision does not

become an empty promise." *Orozco v. Blinken,* 2023 WL 4595377, at *6 (N.D. Ill. Jul. 18, 2023) (internal quotations omitted).

### IV. CONCLUSION

In the absence of a mandatory, nondiscretionary duty that could be violated by the State Department's failure to yet interview Bisma Khan and adjudicate a resulting application, Plaintiff's APA delay claim and mandamus claim fail for lack of subject matter jurisdiction. Defendants' Motion to Dismiss is granted under FED. R. CIV. P. 12(b)(1) and this Court dismisses the case without prejudice.

**IT IS SO ORDERED.**

        Harry D. Leinenweber, Judge
        United States District Court

Dated: 9/28/2023